# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CURTIS A. CLARK and CYNTHIA H. CLARK,
individually and on behalf of their son, J.C., a
mentally disabled Minor,

    Plaintiffs,

v.                                                                                     No. 10-CV-307 WJ/GBM

LAS CRUCES PUBLIC SCHOOL DISTRICT,
BOARD OF EDUCATION for the Las Cruces
Public School District, STAN ROUNDS,
Superintendent of the Las Cruces Public School
District, NYETTA HAINES, Principal of Las Cruces
High School, CATHIE DAVIS, Assistant Principal of
Las Cruces High School, and JOHN AND JANE DOE
NOS. 1-100, in their official and individual capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint and for Qualified Immunity (Doc. 6).  Plaintiffs filed this lawsuit after J.C., their mentally disabled son, was sexually assaulted by another student at Las Cruces High School. Plaintiffs sued the Las Cruces Public School District as well as various authority figures at Las Cruces High School for violation of their federal constitutional rights, federal statutory rights and rights under New Mexico tort law.  Specifically, Plaintiffs allege that the Defendants: (1) violated J.C.'s substantive due process and equal protection rights under the U.S. Constitution; (2) violated the Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act ("RA"); (3) acted negligently under New Mexico law; (4) engaged in the intentional or negligent

infliction of emotional distress; and (5) committed a prima facie tort.  Defendants then filed the instant Motion, arguing that this Court should dismiss Plaintiffs claims on a variety of grounds.  Because Defendants' Motion has some merit, the Court GRANTS Defendants' Motion IN PART as discussed below.

## BACKGROUND

Plaintiffs Curtis and Cynthia Clark are the adopted parents of J.C., a mentally disabled teenager who has been diagnosed with mental retardation, cerebral palsy and fetal alcohol syndrome.  According to the Complaint, J.C. is very social and outgoing, but cannot read or write and functions at the level of a 5-year-old child.  Complaint, at ¶ 12-13.  At all relevant times, J.C. was enrolled in the Special Education Program at Las Cruces High School and received services pursuant to an Individualized Education Plan ("IEP").  *Id.* ¶ 14.  In 2008, J.C.'s IEP specified that J.C. needed continuous supervision and required an adult to accompany J.C. at all times.  *Id.* ¶ 15.

On December 1, 2008, J.C. was eating lunch in the regular lunch room with his fellow students in the Special Education Program.  *Id.* ¶ 30.  An unidentified employee of the Las Cruces Public Schools permitted J.C. to go to the bathroom alone.  *Id.*  Another male student, with a known history of violence (and who was on probation for an earlier incident during which he had threatened his mother with a shotgun), followed J.C. into the bathroom and sexually assaulted him for about thirty minutes.  Afterwards, J.C. told various unidentified employees of the school that he had been assaulted.  *Id.* ¶ 31-35.

At 1:30pm, the Assistant Principal called Plaintiff Cynthia Clark and notified her of the alleged sexual assault.  *Id.* ¶ 36.  Mrs. Clark insisted that the Assistant Principal call the police.  When Mrs. Clark arrived at the school, J.C., Officer Eric Sanchez (the school police officer) and

the Assistant Principal were looking through the school yearbook in an attempt to identify the perpetrator.  J.C. and the Assistant Principal also walked past classrooms for about 15 minutes looking for a student who matched J.C.'s description of the perpetrator.  Finally, Mrs. Clark insisted that she take J.C. to the emergency room for an assessment, collection of evidence and treatment.  *Id.* ¶ 40-42.

The following day, Mrs. Clark accompanied J.C. into Las Cruces High School.  Soon after arriving, J.C. saw the perpetrator and identified him to his mother.  *Id.* ¶ 51-53.  The police took the perpetrator to the station for questioning where he confessed to sexually assaulting J.C.  The perpetrator was subsequently charged with criminal sexual penetration in the second degree.  *Id.* ¶ 56.  His sentencing hearing is pending.  *Id.* ¶ 71.

Despite the fact that the perpetrator was criminally charged, the school did not suspend or expel him allegedly because of the perpetrator's right to an IEP.  *Id.* ¶ 58.  In addition, citing the perpetrator's privacy rights, the school refused to inform the Clarks when the perpetrator was attending school.  The Assistant Principal informed the Clarks that J.C. would be safe because he would be required to stay with his teachers at all times.  Furthermore, J.C. was no longer allowed to eat lunch in the regular lunch room with his friends; rather, he had to remain in the Special Education classroom during lunch.  According to the Complaint, J.C. missed the interaction with other students and felt that he was being punished for being sexually assaulted.  *Id.* ¶ 59.  He also told his parents that he was still afraid of the perpetrator.  *Id.* ¶ 60.

Over two years later, in February 2010, Plaintiffs learned that the Principal, Assistant Principal and other school employees were unilaterally modifying J.C.'s IEP so that he would no longer be under the constant supervision of an adult.  *Id.* ¶ 74.

Plaintiffs thereafter filed this suit against the Defendants alleging: (1) violation of J.C.'s

3

substantive due process and equal protection rights; (2) violation of the Individuals with Disabilities Education Act ("IDEA") and § 504 of the Rehabilitation Act ("RA"); (3) negligence pursuant to the New Mexico Tort Claims Act; (4) intentional or negligent infliction of emotional distress; and (5) prima facie tort.

## DISCUSSION

### I.      Standing

Defendants first argue that Plaintiffs do not have standing to bring these claims on their own behalf.[1]  Besides suing on behalf of their son, Plaintiffs are also suing Defendants on their own behalf.  In order to establish standing to sue on their own behalf, Plaintiffs must show that: (1) they have suffered an injury in fact—i.e. "the invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent"; (2) the injury is causally connected to the action of Defendants; and (3) the injury will likely be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Constitutional Claims.  Here, Plaintiffs have put forth no evidence or argument about what constitutional injuries they have allegedly incurred.  Rather, their Response focuses entirely on the injuries incurred by J.C.  Clearly, however, Plaintiffs do not have standing to sue on their own behalf for violation of J.C.'s constitutional rights.  *See, e.g.*, *JG & PG ex rel. JGIII v. Card*, 2009 WL 2986640, at *6 (S.D.N.Y. 2009); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (noting that the plaintiffs generally must assert their own legal rights and interests and cannot

---

[1] Initially, Defendants also objected that Plaintiffs could not bring these claims on behalf of their son because he had not been judged incompetent.  In their Response, however, Plaintiffs submitted an order from New Mexico state court appointing them co-guardians and co-conservators over their son, J.C., due to J.C.'s mental incapacitation.  Accordingly, the Plaintiffs have standing to bring these claims against Defendants on behalf of J.C.

rest their claims to relief on the legal rights of third parties). Plaintiffs' Complaint itself seems to acknowledge this when it asserts constitutional violations incurred by J.C. only. Complaint, at 22 (alleging that the actions of Defendants violated J.C.'s substantive due process and equal protection rights). Because Plaintiffs have not shown that they themselves suffered any constitutional injuries, they do not have standing to bring these claims on their own behalf.[2]

Statutory Claims. Plaintiffs do, however, have standing to bring claims on their own behalf pursuant to the Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act ("RA"). The Supreme Court has recently held that parents have independent and enforceable rights under the IDEA—both substantive and procedural. *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 526 (2007). Likewise, lower courts have held that parents can sue in their own right under the Rehabilitation Act. *See, e.g.*, *B.D.S. v. Southold Union Free School Dist.*, 2009 WL 1875942, at *15 (E.D.N.Y. 2009) (collecting cases); *see also Annika T. v. Unionville Chadds-Ford School Dist.*, 2009 WL 778350, at *4 (E.D. Pa. 2009). Accordingly, while Plaintiffs do not have standing to assert the constitutional claims on their own behalf, they do have standing to assert claims under the IDEA and Rehabilitation Act.

Tort Claims. Finally, Plaintiffs have standing to assert their tort claims of negligence (pursuant to the New Mexico Tort Claims Act), intentional or negligent infliction of emotional distress and prima facie tort. In their Complaint, the Plaintiffs allege a direct injury by asserting that they have suffered lost wages, anxiety and emotional distress as a result of Defendants' tortious actions. Complaint, at 18 & 25. Defendants do not provide much argument regarding

---

[2] This Court does not mean to imply that Plaintiffs *could not* state a valid constitutional claim for which they have standing (such as an unconstitutional interference with parental rights), only that they have not done so.

...

why Plaintiffs do not have standing to assert these tort claims.  Addressing only the negligent infliction of emotional distress claim, Defendants argue that the Plaintiffs can only recover for this tort if they actually witnessed the alleged assault.  This argument, however, goes to the merits (or lack thereof) of Plaintiffs' claim; it does not address the preliminary quasi-jurisdictional question of standing.  Certainly, a plaintiff may have standing to assert claims which turn out to have no merit.

Accordingly, Plaintiffs have standing to assert their federal statutory claims and the New Mexico tort claims on their own behalf, as well as on behalf of their minor son.  They do not, however, have standing to assert the federal constitutional claims described in their Complaint.  Those claims are dismissed for lack of standing.

## II.     Exhaustion of Administrative Remedies

Defendants next argue that Plaintiffs have not exhausted their administrative remedies as required under the IDEA and the Rehabilitation Act.  Because the question of whether Plaintiffs have exhausted their remedies under the Rehabilitation Act hinges on whether they have exhausted their remedies under the IDEA, the Court will focus first on exhaustion under the IDEA.  *See* 20 U.S.C. § 1415(l) (stating that individuals filing suit under the Rehabilitation Act must exhaust their remedies if they are seeking relief which is also available under the IDEA); *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1267 (10th Cir. 2007) ("Under our precedent, parties are precluded from bringing claims under the ADA and the RA that are educational in nature if they have failed to exhaust IDEA's administrative procedures, and relief for their injuries is available under the IDEA.").

The purpose of the IDEA is to assure that all children with disabilities have a free appropriate public education available to them which meets their unique needs.  *Padilla v.*

*School Dist. No. 1 in the City and County of Denver, Colorado*, 233 F.3d 1268, 1270 (10th Cir. 2000). To identify each child's unique needs, the IDEA requires the local educational agency, in collaboration with the child's parents and teachers, to develop an individualized education program ("IEP") for each child. The IDEA also sets forth a detailed scheme of procedural safeguards designed to protect parental rights to participate meaningfully in decisions affecting their child. *See id.* at 1270-71 (listing provisions which invite parental involvement). For example, the agency must provide written notice to the parents before developing or changing a child's IEP. *Id.* at 1270 (citing 20 U.S.C. § 1415(b)(1)(C)). The agency must also provide parents an impartial due process hearing to present complaints regarding these matters. *Id.* (citing 20 U.S.C. § 1415(b)(1)-(2)). Finally, the parents may appeal any decision to the state educational agency. *Id.* This detailed scheme reflects "Congress's view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." *Smith v. Robinson*, 468 U.S. 992 (1984). Accordingly, plaintiffs must generally exhaust their administrative remedies under the IDEA before filing suit in federal court.

Both parties agree that exhaustion is not required for every claim brought pursuant to the IDEA. Rather, exhaustion is only required for IDEA claims that allege an educational injury—one that could be redressed by the IDEA's administrative procedures. According to the Tenth Circuit, "the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required." *Padilla*, 233 F.3d at 1274. On the other hand, if the plaintiff alleges non-educational injuries, such as physical injuries, exhaustion is generally not required because the IDEA's administrative remedies could not provide plaintiff the relief he or

7

she seeks. *Id.* ("[W]e fail to see how the IDEA's administrative remedies, oriented as they are to providing prospective educational benefits, could possibly begin to assuage Plaintiff's severe physical, and completely non-educational, injuries.")

Here, Plaintiffs Complaint alleges that the Defendants violated the IDEA by: (1) failing to conform with the safety provisions of J.C.'s IEP; (2) imposing restrictions on J.C.'s activities which isolated him from his peers; and (3) attempting to unilaterally rescind the protections afforded to J.C. in his IEP.  Complaint, at 23.  Plaintiffs do not request any prospective educational remedies, but only request monetary damages for past and future medical expenses (including mental health expenses), physical pain, emotional anguish, psychological injury, loss of value and enjoyment of life and lost wages.  Complaint, at 26.  Plaintiffs argue that exhaustion of administrative remedies under the IDEA is not required because they are seeking only monetary relief, rather than prospective educational relief.

The Court holds that Plaintiffs must exhaust their administrative remedies for those portions of their IDEA claim which assert complaints regarding J.C.'s current educational situation—specifically, J.C.'s isolation during the lunch hour and the Defendants' attempt to unilaterally change J.C.'s IEP.  These types of injuries are specifically contemplated by IDEA and IDEA's administrative remedies can certainly redress these injuries.  *See Padilla*, 233 F.3d at 1275 (noting that educational injuries are presumptively redressable through IDEA).  Plaintiffs cannot evade the IDEA's exhaustion requirement merely by limiting their claims to money damages.  *Kutasi v. Las Virgenes Unified School Dist.*, 494 F.3d 1162, 1168-69 (9th Cir. 2007).  Furthermore, while Plaintiffs have alleged emotional and psychological injuries stemming from these claims, they have not alleged any physical injuries.  Merely alleging emotional and psychological injuries does not dispense with the IDEA's exhaustion requirement.  *See Brown v.*

*Hobbs Municipal Sch. Dist.*, 2004 WL 3426439 (D.N.M. Mar. 19, 2004) ("To extend the holding in *Padilla* to emotional injuries could effectively eliminate the exhaustion requirement. Any plaintiff who has allegedly been denied a free appropriate public education may also legitimately contend that he or she has suffered some associated emotional harm.") Because these claims are properly redressable under the IDEA's administrative provisions, Plaintiffs must first exhaust those remedies before filing suit here.[3] Accordingly, the Court dismisses the IDEA claims relating to J.C.'s isolation during the lunch hour and the Defendants' attempt to unilaterally change J.C.'s IEP for failure to exhaust administrative remedies.

However, the Court does not dismiss Plaintiffs' IDEA claim insofar as it relates to Defendants' failure to conform to the safety provisions in J.C.'s IEP. While that claim certainly has an educational component (insofar as Defendants were required to abide by the terms of J.C.'s IEP), Plaintiffs are primarily asserting a claim for past physical injury for which they claim monetary damages. "The remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages."[4] *Padilla*, 233 F.3d at 1275 (quoting *Witte v. Clark*

---

[3] In their Complaint, Plaintiffs allege that they "objected to the isolation of J.C. during the lunch hour and exhausted their administrative remedies with respect to this issue." Complaint, at 24. They also allege that they need not exhaust their administrative remedies with respect to the unilateral decision to rescind the safety provisions in J.C.'s IEP because any such attempt would be futile. "[G]iven the prior changes to J.C.'s IEP which were made in spite of their objections, Plaintiffs will have no effective right to challenge the decision of Defendants." *Id.* Despite these conclusory allegations, however, Plaintiffs fail to put forth any documentary evidence that they have exhausted their remedies on either claim. Because Plaintiffs bear the burden to *plead and show* that they have exhausted their administrative remedies, *Cudjoe v. Independent Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002) (emphasis added), this Court need not rely on Plaintiffs conclusory assertions.

[4] While most circuits have held that the IDEA does not permit plaintiffs to recover compensatory damages, the Tenth Circuit has yet to rule on the issue. *Moseley v. Board of Educ.*

*County Sch. Dist.*, 197 F.3d 1271, 1276 (9th Cir. 1999)). Unlike the other portions of Plaintiffs' IDEA claim, this claim is inextricably intertwined with the alleged sexual assault—which is undoubtedly a claim of physical injury. Furthermore, exhaustion is generally not required when an agency has failed to provide services specified in the child's individualized educational program. *See Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F.3d 478, 489 (2d Cir. 2002); *Covington v. Knox County School System*, 205 F.3d 912, 917 (6th Cir. 2000) (holding that exhaustion is futile and not required when injured child has already graduated, the injuries are wholly in the past, and money damages are the only appropriate remedy). Accordingly, Plaintiffs may continue to assert their IDEA claim (and their Rehabilitation Act claim) *only* on the basis that Defendants failed to conform to the safety provisions in J.C.'s IEP.[5] Plaintiffs may not assert any claim arising out of Defendants' decision to isolate J.C. during the lunch hour nor their decision to unilaterally change the safety provisions in J.C.'s IEP until they have properly exhausted their administrative remedies.

## III. Merits of Federal § 1983 and Title IX Claims

---

*of Albuquerque Public Schools*, 483 F.3d 689, 693 n.7 (10th Cir. 2007).

[5] Because the Defendants only moved to dismiss the IDEA claim on the basis that it was not properly exhausted, the Court need not consider whether Plaintiffs' IDEA claim is actually viable. While Plaintiffs need not exhaust this claim because they are not truly alleging an educational injury, the Court is unsure whether Plaintiffs claim properly falls under the IDEA at all. First, as noted earlier, it is far from certain that the Plaintiffs can recoup the compensatory damages they seek under the IDEA. *See supra* n.4. Second, while a failure to implement a provision in an IEP may give rise to an IDEA violation, *see Couture v. Board of Educ. of Albuquerque Public Schools*, 535 F.3d 1243, 1252 (10th Cir. 2008), it is not clear if an isolated failure to implement an IEP provision (particularly a provision that does not directly relate to education) can constitute an IDEA violation. *See L.C. v. Utah State Bd. of Educ.*, 125 Fed.Appx. 252, 260 (10th Cir. 2005). Finally, claims which are not amenable to IDEA's administrative procedures, like Plaintiffs' claim, may not be IDEA claims at all. The section of the IDEA which grants individuals the right to sue, 20 U.S.C. § 1415(i)(2), appears to grant that right only after the individual goes through the appropriate administrative procedures.

Defendants next argue that this Court should dismiss Plaintiffs' federal claims arising under § 1983 and Title IX.[6]  In addition to their IDEA claim, Plaintiffs have asserted three other types of federal claims: a substantive due process claim arising under § 1983, an equal protection claim arising under § 1983 and a Title IX claim.  For the reasons explained below, Plaintiffs have failed to state a viable claim under any of these theories.  Accordingly, the Court dismisses all Plaintiffs' claims arising under § 1983 and Title IX.

Substantive Due Process.  Plaintiffs first allege that the Defendants violated J.C.'s substantive due process rights.  Generally, however, a state actor's failure to protect an individual against violence from a private actor does not constitute a Due Process violation.  *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989); *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1125 (10th Cir. 2008).  That general rule has two exceptions.  First, when the State has a special or custodial relationship with the victim, the State has an affirmative duty to provide protection to that individual.  *Christianson v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003).  Second, the State may be liable for failing to protect the victim when the State creates the danger which harms the victim.  *Id.*  Here, Plaintiffs only argue that Defendants are liable under the danger-creation theory.  Accordingly, this Court does not address whether Defendants can be liable under the special-relationship theory.

To state a claim under the danger-creation theory, Plaintiffs must show that: (1) the state entity and individual actors created the danger or increased J.C.'s vulnerability to the danger; (2) J.C. was a member of a limited and specially definable group; (3) the Defendants' conduct put

---

[6] Defendants also argue that Plaintiffs have failed to adequately plead their § 1983 claims under the standards set forth in *Twombly* and *Monell*.  Because Plaintiffs have failed to state viable claims under § 1983, the Court need not address Defendants' alternative failure-to-plead argument.

J.C. at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) the Defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience. *Id.* at 1281.  Furthermore, the Due Process clause protects only against "deliberately wrongful government decisions, rather than merely negligent ones." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995).

      Here, Plaintiffs have not alleged facts rising to the level of a Due Process violation.  Plaintiffs fault Defendants for not preemptively conducting a risk assessment to determine which students might pose particular dangers to J.C. and for their failure to develop general plans to prevent sexual harassment.  Plaintiffs also fault Defendants for not implementing J.C.'s IEP on one occasion, when the unnamed school employee permitted J.C. to go to the bathroom alone.  None of these facts suggest that Defendants knew that the perpetrator of the assault was a particular danger to J.C.  In other words, the risk was neither obvious nor known and the Defendants did not act recklessly in conscious disregard of a known risk.  Plaintiffs cite to *Sutton v. Utah School for the Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999), for support, but that case is inapposite.  In *Sutton*, the victim was repeatedly sexually assaulted by the same assailant in the school bathroom.  *Id.* at 1230.  Days after the victim's parents informed the school about the first incident, it happened again.  *Id.*  In that case, the school had *specific* knowledge that the victim had been assaulted by the perpetrator in the bathroom before the second incident occurred.  Here, by contrast, the Defendants had no such knowledge before the assault.  At most, the Defendants were aware that the perpetrator, another student at the school, had committed a violent act in the past.  This knowledge hardly created a "known or obvious danger" to J.C. which Defendants consciously ignored.  Relatedly, the Defendants' conduct, as alleged in the Complaint, does not shock the conscience.  To meet this high standard, the Defendants' conduct must demonstrate a

12

degree of outrageousness and a magnitude of potential harm that is truly conscience-shocking. *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). At most, Defendants' alleged conduct may support a claim of negligence. Because negligence alone cannot support a substantive due process violation, the Court dismisses Plaintiffs' substantive due process claims against the Defendants.

Equal Protection. Plaintiffs also claim that the actions of Defendants violated J.C.'s right to equal protection of the law. In order to state an equal protection claim under § 1983, Plaintiffs must show that J.C. is a member of a protected class and that the Defendants treated J.C. differently from similarly situated individuals. CITE. As a mentally disabled minor, J.C. is arguably a member of a protected class. CITE. In the Tenth Circuit, student-on-student sexual harassment can constitute an equal protection violation in certain cases. *See Murrell v. Sch. Dist. No. 1, Denver, Colorado*, 186 F.3d 1238, 1249-1252 (10th Cir. 1999). In order to assert this type of claim against the individual Defendants, Plaintiffs must show that the individual Defendants were deliberately indifferent to known sexual harassment. *Id.* at 1250. As the Tenth Circuit has explained, the individual Defendants must "participate[] in or consciously acquiesce[] in [the] sexual harassment." *Id.* With respect to the individual Defendants, Plaintiffs cannot make this showing. As discussed above, Plaintiffs have not alleged that the individual Defendants knew, before the incident, of the specific harm J.C. was facing from the perpetrator. Accordingly, none of the individual Defendants could have "participated in or consciously acquiesced in [the] sexual harassment."

In order to assert this type of claim against the school district, Plaintiffs must allege that the school district has an official policy or custom of deliberate indifference to sexual harassment. *Id.* at 1249. Construing Plaintiffs' Complaint liberally, this Court fails to discern

any facts which show that the school district had a policy or custom of deliberate indifference to sexual harassment. To the contrary, the facts in Plaintiffs' Complaint suggest that the school district took immediate action to inform J.C.'s parents, identify the perpetrator and take steps to safeguard J.C. from further assaults. Furthermore, Plaintiffs have produced no facts suggesting that any such policy (to the extent it exists) applies only to J.C., as opposed to the student body as a whole. Because an equal protection claim requires a showing that the defendant treated the plaintiff *differently* from similarly situated individuals, Plaintiffs cannot succeed on their claim without some evidence that the school district treated J.C. differently from other mentally disabled students. Accordingly, this Court dismisses Plaintiffs equal protection claims against the Defendants.

<u>Title IX</u>. Finally, Plaintiffs claim that Defendants' conduct violated the provisions of Title IX. Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Notably, Title IX only authorizes suit against the educational institution; it does not create a cause of action against any individual. *See Fitzgerald v. Barnstable Sch. Comm.*, 129 S.Ct. 788, 796 (2009). Accordingly, Plaintiffs' Title IX claim only lies against the Las Cruces Public School District and not against any of the individual Defendants.

A school district may be liable under Title IX if it is deliberately indifferent to student-on-student sexual harassment. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008). In order to be liable under this theory, the plaintiff must show that the school district: (1) had actual knowledge of, and (2) was deliberately indifferent to, (3) harassment that was so severe, pervasive and objectively offensive as to (4) deprive access to the

educational benefits or opportunities provided by the school. *Id.* (citation omitted). Actual knowledge of the harassment is essential to maintaining a Title IX claim. "[A] failure to prevent sexual harassment by a student *before* it occurs does not violate Title IX . . . absent a showing of an institutional policy of indifference." *Murrell*, 186 F.3d at 1250 n.9. Plaintiffs' Title IX claim fails for the same reason their other § 1983 claims fail: the facts alleged in their Complaint fail to show that the school district had actual knowledge of the risk harassment before it occurred or that the risk of such harassment was obvious. Plaintiffs attempt to argue that the school district had an institutional policy of deliberate indifference, but, again, the alleged facts do not support such a claim. At most, Plaintiffs' allegations support a claim of ordinary negligence rather than deliberate indifference. Accordingly, the Court dismisses Plaintiffs' Title IX claims.

## IV.     New Mexico Tort Claims Act

Finally, the Plaintiffs also assert three state tort law claims against the Defendants: (1) negligence; (2) intentional or negligent infliction of emotional distress; and (3) prima facie tort. All three claims are subject to the New Mexico Tort Claims Act[7], which grants New Mexico government entities and public employees immunity from suit except in certain prescribed circumstances. N.M. Stat. Ann. § 41-4-4 (1978). Section 41-4-6 waives immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of

---

[7] Plaintiffs explicitly bring their negligence claim under the New Mexico Tort Claims Act, but do not mention the Act when alleging the remaining tort claims. Regardless, the New Mexico Tort Claims Act clearly grants immunity to all public employees acting within the scope of their duty. N.M. Stat. Ann. § 41-4-4 (1978). Plaintiffs do not argue that the Defendants were acting outside the scope of their duties when they took the actions (or inaction) described in the Complaint. Accordingly, the Court presumes that Plaintiffs are bringing their claims pursuant to the New Mexico Tort Claims Act.

any building, public park, machinery, equipment or furnishings." Plaintiffs argue that this provision waives the immunity of the Defendants because they were each engaged in the operation and maintenance of a public building—namely, Las Cruces High School.

As an initial matter, the Court dismisses Plaintiffs claims for intentional infliction of emotional distress and prima facie tort. Even assuming that the waiver contained in § 41-4-6 applies to these facts, it only waives immunity for negligence claims. It does *not* waive immunity for intentional torts. *See, e.g.*, *Tate v. Fish*, 347 F.Supp.2d 1049, 1058 (D.N.M. 2004) ("The Tort Claims Act does not provide a waiver of immunity for intentional torts with regard to public employees."); *Garcia-Montoya v. State Treasurer's Office*, 16 P.3d 1084, 1102 (N.M. 2001) (dismissing claim of intentional infliction of emotional distress); *Silva v. Town of Springer*, 912 P.2d 304, 311 (N.M. 1996) (dismissing claims of prima facie tort and intentional infliction of emotional distress). Section 41-4-6 clearly waives immunity only for the "negligence" of public employees. The New Mexico Tort Claims Act states that its terms shall be strictly construed. N.M. Stat. Ann. § 41-4-2. Furthermore, the New Mexico legislature has specifically waived immunity for intentional torts in other provisions which do not apply here. *See* N.M. Stat. Ann. § 41-4-12 (1978); *Weinstein v. City of Santa Fe*, 916 P.2d 1313, 1319 (N.M. 1996). Accordingly, I hold that § 41-4-6 does not waive immunity for intentional torts and I dismiss Plaintiffs claims for intentional infliction of emotional distress and prima facie tort.

Plaintiffs' remaining two tort claims are both negligence claims and therefore fall within the terms of § 41-4-6, if it applies. Defendants make two separate arguments about why § 41-4-6 does not apply here. First, they point out that New Mexico courts only apply § 41-4-6 if the negligent operation or maintenance of the public building creates a dangerous condition that threatens the general public or a class of users of the building. *Upton v. Clovis Municipal Sch.*

*Dist.*, 141 P.3d 1259, 1261 (N.M. 2006). Certainly, here, the alleged failure of Defendants to develop and institute various safety protocols posed a danger to the general student body at Las Cruces High School. *Id.* ("The waiver . . . [extends to failures to implement] safety policies necessary to protect the people who use the building."). Therefore, Defendants' first argument is not persuasive.

Next, Defendants point out that § 41-4-6 is specifically limited to suits alleging "damages resulting from bodily injury" and argue that Plaintiffs have only alleged emotional injuries, which do not suffice. In Count I of their Complaint (the negligence claim), Plaintiffs claim damages for "pain, suffering, anxiety, humiliation and emotional distress on the part of J.C. and lost wages, anxiety and emotional distress on behalf of Plaintiffs." In Count III of their Complaint (the negligent infliction of emotional distress claim), Plaintiffs claim damages only for severe emotional distress. While New Mexico courts have hinted that emotional damages do not constitute "bodily injury", *see, e.g.*, *Holguin v. Tsay Corp.*, 210 P.3d 243, 245 (N.M. 2009), they have also held that emotional damages *are* recoverable under the Tort Claims Act when those damages result directly from bodily injury—such as loss of consortium claims. *See Brenneman v. Board of Regents of University of New Mexico*, 84 P.3d 685, 687 (N.M. App. 2003) (allowing plaintiff to recover for loss of consortium under the Tort Claims Act because loss of consortium directly results from the bodily injury to the plaintiff's spouse). It is true that Plaintiffs' two negligence claims assert only emotional damages. However, these claims flow directly from the sexual assault of J.C. Accordingly, this Court finds that the emotional damages claimed by Plaintiffs are proper under the Tort Claims Act as "damages resulting from bodily injury." Plaintiffs' negligence claims may not be dismissed on this basis.

## CONCLUSION

For the reasons given above, this Court GRANTS IN PART Defendants' Motion to Dismiss. Specifically, this Court holds that: (1) Plaintiffs' federal constitutional claims which they assert on their own behalf are DISMISSED for lack of standing; (2) Plaintiffs' federal IDEA and Rehabilitation Act claims which arise out of J.C.'s isolation during the lunch hour or Defendants' attempt to unilaterally change J.C.'s IEP are DISMISSED for failure to exhaust administrative remedies; (3) Plaintiffs' federal constitutional claims which they assert on J.C.'s behalf are DISMISSED for failure to state a claim; and (4) Plaintiffs' claims for intentional infliction of emotional distress and prima facie tort are DISMISSED because New Mexico has not waived its immunity for intentional torts. Plaintiffs have three remaining claims in this suit: (1) their claim that Defendants violated the IDEA and the Rehabilitation Act by failing to conform to the safety provisions in J.C.'s IEP; (2) their negligence claim; and (3) their negligent infliction of emotional distress claim.

**SO ORDERED.**

UNITED STATES DISTRICT JUDGE