**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CURTIS A. CLARK and CYNTHIA H. CLARK,
individually and on behalf of their son, J.C., a
mentally disabled Minor,

    Plaintiffs,

v.                                                                                                        No. 10-CV-307 WJ/GBM

LAS CRUCES PUBLIC SCHOOL DISTRICT,
BOARD OF EDUCATION for the Las Cruces
Public School District, STAN ROUNDS,
Superintendent of the Las Cruces Public School
District, NYETTA HAINES, Principal of Las Cruces
High School, CATHIE DAVIS, Assistant Principal of
Las Cruces High School, and JOHN AND JANE DOE
NOS. 1-100, in their official and individual capacities,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendants' Motion for Qualified Immunity and to Dismiss the Individual Defendants and What Remains of Count III and/or Motion to Reconsider Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies and Memorandum in Support Thereof (ECF No. 23). Plaintiffs filed this lawsuit after J.C., their mentally disabled son, was sexually assaulted by another student at Las Cruces High School. Plaintiffs sued the Las Cruces Public School District as well as various authority figures at Las Cruces High School for violation of their federal constitutional rights, federal statutory rights and rights under New Mexico tort law. In the instant Motion, Defendants request that the Court:

(1) dismiss the individual defendants (the school officials) from the case; (2) grant the individual defendants qualified immunity; (3) dismiss what remains of Count III on the merits; and/or (4) reconsider and dismiss what remains of Count III for failure to exhaust administrative remedies. Plaintiffs have opposed the Motion. Because Defendants' Motion has some merit, the Court GRANTS Defendants' Motion IN PART as discussed below.

## BACKGROUND

Plaintiffs Curtis and Cynthia Clark are the adopted parents of J.C., a mentally disabled teenager who has been diagnosed with mental retardation, cerebral palsy and fetal alcohol syndrome. At all relevant times, J.C. was enrolled in the Special Education Program at Las Cruces High School and received services pursuant to an individualized education plan ("IEP"). *Id.* ¶ 14.  J.C. is very social and outgoing, and lacks the inhibitions necessary to function safely on his own in a high school environment. Compl. ¶¶ 12-13. In 2008, J.C.'s IEP specified that J.C. needed continuous supervision and required an adult to accompany J.C. at all times.  *Id.* ¶ 15. However, on December 1, 2008, an unidentified employee of the Las Cruces Public Schools permitted J.C. to go to the bathroom alone at lunchtime. *Id.* ¶ 30. Another male student, with a known history of violence, followed J.C. into the bathroom and sexually assaulted him for about thirty minutes. *Id.* ¶¶ 31-35.

On July 1, 2010, the Court dismissed (1) Plaintiffs' federal constitutional claims which they asserted on their own behalf, for lack of standing; (2) Plaintiffs' federal statutory claims which arose out of J.C.'s isolation during the lunch hour and Defendants' attempt to unilaterally change J.C.'s IEP, for failure to exhaust administrative remedies; (3) Plaintiffs' federal constitutional claims which they asserted on J.C.'s behalf, for failure to state a claim; and (4) Plaintiffs' claims for intentional infliction of emotional distress and prima facie tort, because

New Mexico has not waived its immunity for intentional torts. *See* Memorandum Opinion and Order, ECF No. 22. Plaintiffs' remaining claims in this case consist of: (1) their claim that Defendants violated the Individuals with Disabilities Education Act and the Rehabilitation Act by failing to conform to the safety provisions in the child's individualized education plan; (2) their negligence claim; and (3) their negligent infliction of emotional distress claim.

## DISCUSSION

### I.     Merits of the Federal Statutory Claim

Plaintiffs have one remaining claim arising under federal law. They argue that Defendants violated a provision of the Safety Plan in J.C.'s individual education plan ("IEP") by allowing him to go to the bathroom alone during school hours. According to Plaintiffs, this amounts to a failure to properly implement an IEP, and as such violates the Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act ("RA"). This Court previously found that the claim survived Defendants' Motion to Dismiss for failure to exhaust administrative remedies, because the administrative process could not have redressed the physical injuries caused by Defendants' breach. *See* Memorandum Opinion and Order at 9-10, ECF No. 22. The Court now finds that Plaintiffs have failed to state a claim under either the IDEA or the RA.

#### A.     The IDEA Claim

The IDEA is a comprehensive educational scheme focused on the right of disabled children to a free appropriate public education ("FAPE"). 20 U.S.C. § 1400. Schools receiving federal funding must adopt a policy that allows for individualized assessments of the needs of every disabled child, with the input of the child's parents, teachers, and representatives of the school district. Ultimately, the school must create and implement an individualized education

3

plan designed to meet that child's unique needs. *Padilla v. Sch. Dist. No. 1 in Denver, Colorado*, 233 F.3d 1268, 1270 (10th Cir. 2000).

Plaintiffs' claim under this statute fails for several reasons. First, a violation of an IEP generally must be "substantial" and "material" in order to constitute a breach of the IDEA, and the breach in question does not rise to this level. Second, it is far from clear that the IDEA provides a remedy of monetary damages, because the Tenth Circuit has yet to rule on this issue and the other circuits are split. Furthermore, the IDEA is designed to remedy only those injuries which are educational in nature and thus amenable to the administrative process, meaning that where exhaustion is not required, there is probably no substantive cause of action under this statute.

First, the breach complained of in this case is neither "substantial" nor "material" enough to rise to the level of a violation of the IDEA, even supposing that this Act recognizes physical injury as a basis for relief. In *Couture v. Board of Education of Albuquerque Public Schools*, the Tenth Circuit adopted the proposition that an IEP violation must be more than de minimis in order to be actionable. 535 F.3d 1243, 1252 (10th Cir. 2008). The court collected citations from several different circuits illustrating the magnitude of the IEP violations necessary to rise to an IDEA violation. *Id.*

For example, in the first case cited, the Ninth Circuit clarified that an IEP violation is actionable only if the failure to conform to the plan is "material," that is, if "there is more than a minor discrepancy between the services provided to a disabled child and those required by the IEP." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 815 (9th Cir. 2007). The Ninth Circuit affirmed the district court's findings that a range of violations of the IEP in question in that case–the plaintiffs had listed nine different areas in which they believed the

implementation of the IEP had fallen short of the written specifications–were not material. *See Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, No. 02-1060, 2005 WL 50130, at *10-11 (D. Or. Jan. 11, 2005).

Similarly, in *L.C. v. Utah State Board of Education*, the Tenth Circuit found that "occasionally assigning homework" to a student whose IEP prohibited homework did "not amount to a clear failure" under the IDEA. 125 Fed. App'x 252, 260 (10th Cir. 2005). This example is illuminating: instructors in that case sometimes failed to properly adhere to every detail of the IEP, but these occasional breaches did not rise to the level of a material violation of the IEP.

Plaintiffs in this case argue that, because the safety plan outlined in J.C.'s IEP was a "critical" component of his education, the breach of the plan that left him vulnerable to attack constituted a "major discrepancy between the services that LCPS was to provide to J.C. and the services required by his IEP." This argument fails, however, once the consequences of the breach are separated from the breach itself. As unfortunate and severe as the consequences of this breach were for J.C., the breach itself was technical. The IDEA can provide no relief for this type of breach; redress lies with traditional principles of state law.

Further complicating Plaintiffs' arguments, the Tenth Circuit has explicitly declined to decide whether monetary damages are available as a remedy under the IDEA. *Moseley v. Bd. of Educ. of Albuquerque Pub. Schs.*, 483 F.3d 689, 693 n.7 (10th Cir. 2007). Other courts are split on the issue. *Compare Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999) ("Although the IDEA allows courts to grant 'such relief as the court determines is appropriate,' ordinarily monetary damages are not available under that statute." (citation omitted)), *and Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 991 (7th Cir. 1996) ("[W]e conclude that damages are

not "relief that is available under" the IDEA . . . ."), *with W.B. v. Matula*, 67 F.3d 484, 494-95 (3d Cir. 1995) (holding that plaintiffs may seek monetary damages under both the RA and the IDEA).

Plaintiffs cite a memorandum opinion written by Judge Brack which found that the IDEA authorizes compensation for physical injury in the form of damages. *See* Memorandum Opinion and Order 15-16, *Escobar v. Las Cruces Pub. Sch. Dist.*, No. 07-1191 RB/KBM (D.N.M. Oct. 30, 2008), ECF No. 77. His reasoning, however, does not convincingly apply to this case. Although in the case cited the Supreme Court did approve of monetary reimbursement as a form of relief available under the Act, *see Sch. Comm. of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985), the Court explicitly distinguished that relief from monetary "damages," noting that the latter were not at issue in that case. *Id.* at 370-71. Put simply, there is no specific authorization from either the Supreme Court or this circuit to grant compensatory money damages under the IDEA.

Moreover, all the cases discussed above concern injuries that are educational in nature, and thus related to the purpose behind the IDEA's enactment. In this case, the injury alleged is not educational, and so compensatory damages are not appropriate in light of the purposes of the Act. *Cf. Garcia v. Bd. of Educ. of Albuquerque Pub. Schs.*, 520 F.3d 1116, 1129 (10th Cir. 2008) (explaining that remedial orders must be appropriate in light of the educational purposes of the IDEA). Plaintiffs cannot have it both ways: either the injury is educational in nature, or it is not. If exhaustion is not required because IDEA procedures cannot remedy the injury, then damages are not available since redressing a physical injury incurred as a result of a criminal assault does not further the purpose of the Act's procedures. As the Seventh Circuit has noted, "[i]t would be odd to award damages because of deeds with so little educational effect that no ongoing steps to

overcome them [e.g., though the administrative process] are warranted." *Charlie F.*, 98 F.3d at 993. In fact, the plain language of the section of the statute granting the right to sue, 20 U.S.C. § 1415(i)(2), supports the idea that non-educational injuries are not meant to be redressed under this statutory scheme. This section appears to grant that right only after the plaintiff has gone through the appropriate administrative procedures. Thus, on balance, it seems more likely than not that the IDEA cannot grant the type of relief Plaintiff is seeking in this case, that is, monetary redress for physical injuries suffered while in school. Stated another way, the IDEA was not intended by Congress to offer redress to students who are the victims of criminal acts occurring at school.

    **B.**    **The RA Claim**

Section 504 of the RA prohibits programs receiving federal funding from denying benefits to or discriminating against disabled individuals. 29 U.S.C. § 794(a). Plaintiffs argue, in a somewhat conclusory fashion without any citations to legal authority, that the Defendants' failure to properly implement the IEP's safety plan constitutes a violation of section 504. Pls.' Resp. at 14, ECF No. 26. In fact, neither party adequately briefs the merits of the RA claim. By not addressing the matter, both seem to assume that the legal analysis is identical under the RA and the IDEA. This is not the case, as the Tenth Circuit instructed in *Miller ex rel. S.M. v. Board of Education of Albuquerque Public Schools*, 565 F.3d 1232, 1246 (10th Cir. 2009).

Regardless, in light of Plaintiffs' failure to state a claim under the IDEA, a detailed analysis of their RA claim is unnecessary. "[W]hen [a] plaintiff fails to prove [that an] IEP violated the IDEA, claims based on . . . [the] Rehabilitation Act must also fail." *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 728 (10th Cir. 1996) (citing *D.F. v. W. Sch. Corp.*, 921 F. Supp. 559, 573-74 (S.D. Ind. 1996)). Thus, Plaintiffs' federal claim is dismissed because

a single instance in which a school district failed to comply with the terms of a student's IEP does not rise to the level of a violation of either the IDEA or the RA.

## II.     Qualified Immunity and Dismissal of Individual Defendants

Because the Plaintiffs' IDEA/RA claim is dismissed on the merits, the issue of qualified immunity on the federal statutory claim is moot. Similarly, while Plaintiffs concede Defendants' assertion that IDEA and RA claims may not be brought against the school officials in their individual capacities, *see* Pls.' Resp. at 18, it is also a moot issue due to the dismissal of these claims on the merits. Defendants' motion is also asking for too much: they have apparently moved to have all individual defendants dismissed from the entire action, but there are still state tort claims remaining that, on the Plaintiffs' version of the facts, may lie against the individual officials. However, the Court does not reach that issue in this case, for reasons explained below.

## III.    Failure to Exhaust Administrative Remedies

Defendants' motion next asks the Court to reconsider the ruling in the first Memorandum Opinion and Order and dismiss the IDEA/RA claim for failure to exhaust administrative remedies. In general, there are three grounds for granting a motion to reconsider: 1) if a manifest error of law or fact has been committed by the court; 2) if new evidence has been discovered; and 3) if there has been an intervening change in controlling law. *Servants of the Paraclete, Inc. v. Great Am. Ins.*, 866 F. Supp. 1560, 1581 (D.N.M. 1994). "A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Benedictine Coll. v. Century Office Prods.*, 866 F. Supp. 1323, 1326 (D. Kan. 1994).  The decision whether to grant a motion to reconsider is committed to the sound discretion of the trial court. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1514-15

(10th Cir. 1995).

Defendants do not articulate any of the above bases as support for their Motion. Instead, they appear to be arguing that the Court simply reached the wrong outcome. They contend that "a failure to exhaust should not be parsed" and that dismissal of one claim for the failure to exhaust "requires dismissal of the entire action." Defs.' Mot. to Dismiss at 10, ECF No. 23. The citation for this proposition is to *Centennial School District v. Phil L. ex rel. Matthew L.*, 559 F. Supp. 2d 634, 648 (E.D. Pa. 2008). But this case, even if it were persuasive authority, is entirely inapposite. First of all, the case does not even take a position on the issue of "parsing" the case remedy-by-remedy, but merely requests further briefing on the subject. *Id.* at 648. Second, the discussion quoted by Defendants refers to the fact that the plaintiffs in *Centennial School District* exhausted their administrative remedies on some questions and not others, and the district court noted that exhaustion on all claims might be required before any claims could proceed. *Id.* All claims in that case were educational in nature and thus potentially subject to IDEA administrative remedies. In the current case, the situation is flipped: the first Memorandum Opinion and Order allowed Plaintiffs to continue with the claims that never required exhaustion in the first place.

In sum, Defendants have produced no arguments sufficient to grant their Motion to Reconsider, and I see no reason to reconsider what I thoughtfully considered the first time around.

## IV.     State Law Claims

With only state law claims remaining in the case, this lawsuit is no longer a matter for the federal courts. "When a plaintiff's federal claims are dismissed before trial, the state claims should also be dismissed as well." *Lawson v. Engleman*, 67 Fed. App'x 524, 527 n.4 (10th Cir.

2003). Plaintiffs have a prima facie tort claim and a negligent infliction of emotional distress claim remaining in this suit, both of which are matters of state law for state courts.

## CONCLUSION

For the reasons given above, this Court GRANTS IN PART Defendants' Motion to Dismiss. Specifically, this Court holds that: (1) Plaintiffs' IDEA/RA claim is DISMISSED for failure to state a claim; (2) Defendants' request to grant the individual defendants qualified immunity and/or dismiss them from the suit is DENIED as moot; and (3) Defendants' request to reconsider the issue of exhaustion is DENIED. The Court declines to exercise supplemental jurisdiction over the remaining state law tort claims, and hereby dismisses those claims without prejudice.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE